IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JAMES LESTER**, <br><br> Plaintiff, <br><br> v. <br><br> **MICHAEL J. ASTRUE**, Commissioner of Social Security <br><br> Defendant. | Case No.: 6:10-CV-00182-SI <br><br> **OPINION AND ORDER** |

RORY LINERUD
PO Box 1105
Salem, OR 97308

    Of Attorneys for Plaintiff

AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR  97204-2902

DAVID J. BURDETT
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

    Of Attorneys for Defendant

**SIMON, District Judge,**

## I. INTRODUCTION

James Lester seeks judicial review of the final decision by the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income disability benefits. Mr. Lester asserts that the Commission erred at steps three, four and five of the sequential analysis by not finding that he suffers from a listed impairment; by not adequately accommodating two of his alleged disabilities in the residual functional capacity analysis; and by relying on allegedly faulty testimony by a vocational expert as to whether Mr. Lester could continue his past relevant work or engage in other occupations for which there are significant numbers of jobs in the national economy. For the reasons that follow, the Commissioner's decision is AFFIRMED.

## II. BACKGROUND

Mr. Lester first filed an application for supplemental security income disability benefits on October 2, 1997, claiming he had been unable to work since October 1, 1997. The Commissioner repeatedly denied this claim, and it does not appear that Mr. Lester ultimately pursued it. Tr. 16. Instead, Mr. Lester filed a new application on October 4, 2000, alleging impairments of epilepsy, hearing loss, and bi-polar depression starting in September 1998. Tr. 84. The procedural history and medical record associated with this application is extensive and is only partially summarized here. Further details are discussed as relevant throughout the remainder of this opinion.

### A.    First Hearing, Decision and Remand

The Commissioner denied Mr. Lester's claim initially and on reconsideration, and Mr. Lester timely requested a hearing before an administrative law judge (ALJ). At that hearing,

Mr. Lester testified that he suffers from nighttime seizures, but that they were presently controlled by medication. Tr. 40. He did not know when his last seizure was. *Id.* Mr. Lester described his mental health impairment as "[m]ood swings with aggressive behavior" and suicidal tendencies, and he recounted a nine-day in-patient psychiatric treatment in Arkansas. Tr. 44. He claimed he had trouble concentrating and remembering things. Tr. 48. As to his hearing loss, Mr. Lester testified that he wore hearing aids and relied on lip reading to supplement his understanding. Tr. 40.

Mr. Lester testified as well to additional medical complaints. According to Mr. Lester, he had been diagnosed with diabetes but did not suffer from any symptoms. Tr. 42. He described hand tremors that his neurologist could not explain but which made it hard to write or carry a cup of coffee. Tr. 43-44. He claimed he wore braces on his wrists in the evening due to pain but that he did not have carpal tunnel syndrome. Tr. 45-46. Mr. Lester also alleged that he suffered from debilitating back pain and numbness in his legs. Tr. 39. He rated the pain in his legs as an 8 out of 10 and claimed the pain stopped for no more than two hours a day. *Id.* His lower back pain, he testified, ranked a 9 or 9.5 out of 10 and was constant. *Id.* He was not on any pain medication. *Id.* Due to these conditions, he claimed he could not sit or stand for much longer than thirty minutes out of an eight-hour period. Tr. 46. Mr. Lester asserted he could not sit or stand for longer than five minutes without suffering "excruciating pain." Tr. 47.[1] Mr. Lester also claimed he suffered from irritable bowel syndrome, which required him to go to the bathroom one hundred times a day, with each visit lasting five minutes to an hour. Tr. 42-43.

Mr. Lester's wife, Lisa, also testified. She claimed Mr. Lester suffered from seizures three or four times a day. Tr. 58. During the night seizures, she claimed he would roll over and

---

[1] Despite this testimony, the ALJ described Mr. Lester as "calmly" sitting through the 50-minute hearing "in no apparent discomfort." Tr. 21.

OPINION AND ORDER – Page 3

grab and choke her.  *Id.*  Because Mr. Lester did not often leave their house, only she and her mother had witnessed these seizures.  *Id.*  As for his alleged irritable bowel syndrome, Ms. Lester testified that her husband had three to five episodes a day, with each episode lasting two hours or more.  Tr. 59-60.  She testified that he could not sit or stand for more than a few minutes at a time and that sometimes he would fall down because his legs would give out on him.  Tr. 60-61.

      The ALJ also heard from a vocational expert.  The ALJ asked the expert to discuss Mr. Lester's ability to engage in his prior work or other occupations if he were restricted to non-heavy work with the following non-exertional limitations: no heights, driving, or hazards (due to the seizure condition); no noisy environments or situations where he does not receive one-one-one face contact with the person giving him instructions (due to the hearing impairment); no frequent contact with the public; and no requirement of fine motor skills, though "gross motor manipulation" would be acceptable (to account for the hand tremor).  Tr. 63.  The vocational expert asserted Mr. Lester could still perform his prior work as a dishwasher given those limitations, but not if he were limited to light work.  Tr. 63-64.  She identified, however, three other types of jobs he would still be capable of performing in that case.  Tr. 64.

      The ALJ denied Mr. Lester's disability claim in a decision issued September 25, 2003.  In particular, the ALJ found the testimony of Mr. Lester and his wife to be not credible, noting that Mr. Lester's allegations "are greatly disproportionate to the medical record and observations." Tr. 19-21.  On review by the U.S. District Court, this decision was vacated and remanded with instructions to consider reviewing physicians' opinions regarding limitations on concentrated exposure to noise, extreme cold, fumes, and dust; to apply the required special technique for evaluating a mental impairment; and to obtain supplemental evidence from a vocational expert in light of these additional considerations.  Tr. 433-40.  On remand, the Social Security

OPINION AND ORDER – Page 4

Administration's Appeals Council consolidated with the case a new application for benefits filed by Mr. Lester on November 19, 2003. Tr. 440.

### B.    Second Hearing, Decision and Remand

The ALJ held two additional hearings on remand. Mr. Lester testified again that his back pain ranked an 8.5 out of 10 and that his ability to sit and stand had continued to deteriorate. Tr. 826-27. He also claimed his seizures had increased in frequency to five or six a week. Tr. 828. This latter testimony was contradicted by the contemporaneous medical examination of a specialist, Dr. Brooks, who could not pin Mr. Lester down on how frequently the seizures occurred and who was skeptical that Mr. Lester in fact suffered from a seizure disorder. Tr. 712-14.

A vocational expert also testified based on a hypothetical posed by the ALJ involving no more than medium work with the following non-exertional limitations: no heights or hazards (due to the seizure condition); no concentrated exposure to noise or extreme cold; ability to communicate with co-workers face-to-face (due to the hearing impairment); no frequent interaction with the public; and no "fine motor manipulation" (due to the hand tremors). Tr. 836. The vocational expert believed this ruled out Mr. Lester's prior work washing dishes, preparing food, and setting up banquets at a restaurant because that work involved team effort in which Mr. Lester's limited communication ability would be a problem. Tr. 835-36. However, she identified several additional jobs she believed Mr. Lester could still perform. Tr. 837.

The ALJ again rejected Mr. Lester's application for disability in a decision dated July 25, 2006. Tr. 357. He again found Mr. Lester's testimony and the reporting of his wife and mother-in-law to be not credible given inconsistencies with the objective medical evidence. Tr. 367-68.

The ALJ concluded that Mr. Lester could not engage in his past relevant work but that he could perform other jobs existing in substantial numbers in the national economy. Tr. 368-69.

On review by the U.S. District Court, the ALJ's decision was again vacated and remanded because the job categories described by the vocational expert exceeded the residual functional capacity identified by the ALJ in both his hypothetical posed to the vocational expert and in his written decision. Further, the ALJ had not noted and resolved some inconsistent findings among the opinions of three reviewing physicians. Tr. 778-785. Because the case was remanded twice, the Appeals Council directed it be assigned to a new ALJ. Tr. 785.

### C.    Following the Second Remand

The new ALJ held an additional hearing on May 7, 2009. Tr. 976. When questioned by the ALJ, Mr. Lester reported that his last seizure had been a couple months prior. Tr. 984. To address the instructions on remand thoroughly, the ALJ posed three different hypotheticals to the vocational expert based on the three different reviewing physicians' opinions. Tr. 988-91. With some qualifications, the vocational expert concluded under each hypothetical that Mr. Lester might be able to continue his prior work as a kitchen helper and fast-food worker. Tr. 989-95. She then provided three examples of types of occupations that she believed Mr. Lester could definitely still perform. Tr. 995.

In a decision issued October 19, 2009, the ALJ denied Mr. Lester's application for disability benefits. Mr. Lester timely filed for review before this court.

### III. DISABILITY DETERMINATION AND STANDARDS

### A.    Legal Standards

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted

or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

"Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Commissioner*, 648 F.3d 721, 724 (9th Cir. 2011) (citing 20 C.F.R. § 404.1520). The Keyser court described the five steps in the process as follows:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25 (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

The claimant bears the burden of proof for the first four steps in the process. If the claimant fails to meet the burden at any of those four steps, then the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001); *see Bowen v. Yuckert*, 482 U.S. 137, 140-41, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987); 20 C.F.R. § 404.1520 (setting forth general standards for evaluating disability).

The Commissioner bears the burden of proof at step five of the process, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and word experience." *Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails meet this burden, then the claimant is disabled, but if the Commissioner proves the claimant is able to perform other work which exists in the national economy, then the claimant is not disabled. *Bustamante*, 262 F.3d at 954 (citing 20 C.F.R. §§ 404.1520(f),

416.920(f); *Tackett*, 180 F.3d at 1098-99).

B.     Decision of the Administrative Law Judge

At step one, the ALJ found that Mr. Lester had not engaged in substantial gainful activity since the date of his application (October 4, 2000).  Tr. 752.  At step two, he found that Mr. Lester suffered from the severe impairments of mild degenerative disc disease, benign intentional tremor, bilateral sensorineural hearing loss, seizure disorder, asthma, bilateral hand tremor and bipolar disorder.  *Id.*  Mr. Lester does not object to these findings.

At step three, the ALJ had to determine whether any of these impairments, or any combination of them, meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, subpart P, Appendix 1.  If so, Mr. Lester would be considered totally disabled and would automatically be entitled to benefits.  The ALJ first analyzed Mr. Lester's psychiatric impairment using the special four-part evaluation and concluded the impairment was not totally disabling.  Tr. 752-53.  He then concluded that each of Mr. Lester's physical impairments do not meet or equal the listed impairments.  Tr. 753.

Moving on to step four, the ALJ found that Mr. Lester had the following residual functional capacity: medium work with limited to occasional public contact; no use of ladders, ropes, scaffolds, or hazards; no loud noises rate a "4" on the audiology scale; no concentrated exposure to fumes, dusts, gases, extreme heat or coldness; and no requirement of fine dexterity.  Tr. 754.  In making this finding, the ALJ discounted Mr. Lester's testimony as not credible.  *Id.*  He also noted that the two most recent medical records actually undermined Mr. Lester's disability claim: a treating physician had recently concluded that Mr. Lester could work with vocational rehabilitation assistance, and a nurse practitioner had questioned Mr. Lester's self-reporting of symptoms.  Tr. 754-55.  The ALJ noted that past and current medical records

OPINION AND ORDER – Page 8

uniformly show that Mr. Lester's seizure disorder, diabetes, depression and asthma were all well-managed through medication. Tr. 755, 757-58. He detailed the weak objective medical evidence regarding Mr. Lester's seizures and back pain. Tr. 756-57. The ALJ rejected Mr. Lester's claim of irritable bowel syndrome, Tr. 758, a finding Mr. Lester does not dispute. He expressed doubt about Mr. Lester's alleged hand tremors, but nonetheless took the impairment into account by excluding consideration of jobs that would require fine dexterity. Tr. 758. Regarding the three different reviewing physicians' opinions, the ALJ explained that he relied on the most recent, that of Dr. Lahr, because it was based on the most extensive medical record, incorporated more of the symptoms claimed by Mr. Lester, suggested greater work restrictions than the prior opinions, and was supported by the treatment records. Tr. 759.

The ALJ found that Mr. Lester's past relevant work included the occupation of "kitchen helper," Dictionary of Occupational Titles (DOT) 318.687-010, and "fast-foods worker," DOT 311.472-010.[2] Based on the testimony of the vocational expert and taking into account Mr. Lester's age, education, work experience, and residual functional capacity, the ALJ concluded that Mr. Lester could still engage in these occupations. Alternatively, under step 5, he found that Mr. Lester could perform three other categories of work identified by the vocational expert for which jobs existed in significant numbers in the national economy. Tr. 760-61. On these alternative bases, the ALJ concluded that Mr. Lester was not disabled. Tr. 761.

## IV. STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such

---

[2] DOT is a publication of the U.S. Department of Labor that gives detailed requirements for a variety of jobs. The Social Security Administration has taken administrative notice of the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1153 n.8 (9th Cir. 2007).

OPINION AND ORDER – Page 9

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## V. DISCUSSION

### A.    Step Three: Listed Impairments

Mr. Lester asserts that the ALJ erred at step three of the sequential analysis by not considering whether his seizure disorder met or equaled a listed impairment. Mr. Lester is incorrect. The ALJ specifically noted that "the claimant's well controlled seizure disorder does not result in the required frequency of episodes required under Listing 11.02. In fact, with all nerve conduction studies over the years being negative, documentation of a seizure disorder is weak." Tr. 753.

Mr. Lester also faults the ALJ for not giving reasons for rejecting his own testimony that he has at least one seizure a month. This is also incorrect. The ALJ made a clear determination that Mr. Lester's testimony was not credible, Tr. 754, and that determination is supported by the contradictions the ALJ identified between Mr. Lester's testimony and objective medical records. *See, e.g.*, Tr. 19-22, 363-365, 758; *see also Morgan v. Commissioner*, 169 F.3d 585, 599-600 (9th Cir. 1999) (credibility determinations are for the Commissioner to make, as long as the finding is supported by clear and convincing reasons). Further, Mr. Lester himself was not consistent in his self-reporting and had testified at the most recent hearing that he had not had a seizure for a couple of months. Tr. 984.

Regarding Mr. Lester's allegations that he suffers from persistent seizures, the ALJ noted

OPINION AND ORDER – Page 10

that "there is no objective medical support for the frequency and extent of seizures alleged by the claimant. Diagnostic studies, the absence of hospitalizations, and repeated EEG testing from July 26, 1993 through the present have been negative." Tr. 756. The ALJ also relied on the opinion of an examining specialist, Dr. Brooks, to whom Mr. Lester was referred by his primary doctor in 2005. Tr. 756. Dr. Brooks recorded that Mr. Lester has an "[a]pparent seizure disorder, though the history is a bit unusual. Seizures lasting one to two hours at a time and the frequency that he's having them are to say the least suspicious." Tr. 714. When questioned by Dr. Brooks, Mr. Lester first claimed that he had a seizure every other day, then said he had one once a week, and then suggested his last seizure had been two weeks prior. Tr. 712. At a later meeting with Dr. Brooks, Mrs. Lester reported that Mr. Lester had had several multi-hour seizures while sleeping. Dr. Brooks noted: "This strikes me as rather bizarre, and again raises the issue of some sort of pseudo seizure or non-epileptic event." Tr. 710. He was hesitant to modify Mr. Lester's seizure medications until Mr. Lester submitted to further in-patient testing. *Id.* Mr. Lester declined to do so. Tr. 756.

In fact, there appears to be no medically documented seizure in all of Mr. Lester's voluminous medical files. Considering the record as a whole, the ALJ did not err in concluding that Mr. Lester's alleged seizure disorder does not meet or equal a listed impairment.

**B.    Residual Functional Capacity**

Mr. Lester asserts that the ALJ's residual functional capacity finding does not adequately account for two of Mr. Lester's impairments, bilateral hand tremor and bilateral hearing loss.

*1.    Hand Tremors*

The ALJ stressed that Mr. Lester's claim of bilateral hand tremor was supported by little objective medical evidence and that "the existence of a medically determinable condition

regarding tremors, for which [Mr. Lester] receives no treatment or restrictions by his treating neurologists, is questionable." Tr. 758. The ALJ also noted that Mr. Lester's activities of daily living, including regularly using a computer keyboard, appeared to be unaffected by the alleged impairment. *Id.* However, "in an abundance of caution," the ALJ adopted the opinion of reviewing physician Dr. Lahr on this issue. *Id*.

In his residual physical functional capacity assessment, Dr. Lahr had marked under the "manipulative limitations" section that Mr. Lester's "fingering (fine manipulation)" ability was "limited." Tr. 661. Dr. Lahr explained this indication as follows: "Fine motor tasks limited due to intention tremor. Cl[aimant] can do activities such as keyboarding and cash register. He cannot do precision tasks such as using small hand tools." *Id.* The ALJ interpreted this remark as restricting Mr. Lester to jobs that would not require "fine dexterity." Tr. 758.

Mr. Lester argues that Dr. Lahr's assessment was unacceptably vague; that Dr. Lahr or the ALJ should have clarified how much "fingering" Mr. Lester could be expected to do in a job; and that the ALJ erred in using the term "fine dexterity" to describe the limitation identified by Dr. Lahr. These arguments come down to a disagreement between Mr. Lester and the ALJ over what type of limitation Dr. Lahr described: Mr. Lester believes Dr. Lahr identified a limitation based on *repetitive* handling, while the ALJ understood the limitation to relate to *precise* hand control.

The ALJ's interpretation that Dr. Lahr meant "finger dexterity" and not "fingering," as the terms are used in the DOT, is supported by substantial evidence and must be affirmed. Dr. Lahr clarified in his notes that Mr. Lester was not limited in his ability to use a keyboard or a cash register, suggesting that "fingering"—even repetitive fingering—was not of concern. Rather, Dr. Lahr identified a restriction on "fine motor tasks," "precision tasks," and the use of

OPINION AND ORDER – Page 12

small hand tools.  One could reasonably infer, as the ALJ did, that Dr. Lahr was distinguishing between repetitive fingering and finger dexterity, and that he considered Mr. Lester to be limited only as to the latter.  *See Sample*, 694 F.2d at 642 (the ALJ "is entitled to draw inferences logically flowing from the evidence").

### 2. *Hearing Loss*

There is no dispute that Mr. Lester has a significant hearing loss in both ears.  Tr. 758.  Mr. Lester argues, however, that the ALJ did not adequately accommodate this hearing loss in the residual functional capacity finding.  The ALJ accounted for Mr. Lester's hearing loss by finding that he cannot work in jobs with a noise factor of "4" or greater under the DOT.  The ALJ based this restriction on an audiologist's report that Mr. Lester must rely on lip reading and body language interpretation in "difficult communications situations."  Tr. 619.  The ALJ interpreted "difficult communications situations" as those involving loud noise.  Tr. 758.  It was not unreasonable for the ALJ to conclude, based on his review of this treating physician's opinion (which is not disputed by Mr. Lester), that Mr. Lester's hearing impairment only causes communications difficulties in loud environments.  To the extent Mr. Lester points to the ALJ's findings in previous decisions, the first two ALJ decisions in this case have been vacated and do not in any way bind the ALJ in his *de novo* consideration of Mr. Lester's claims.  The ALJ is not required to explain why he reached a new or different conclusion, as long as his own conclusion is supported by substantial evidence.  *See Massachi v. Astrue*, 486 F.3d 1149, 1154 (9th Cir. 2007).

Further, in the relevant hypothetical posed to the vocational expert during the most recent hearing, the ALJ specified that "any verbal instructions should be given directly and not in a group setting."  Tr. 993.  Thus the vocational expert's testimony, on which the ALJ relied in his

step four and step five analysis, did take into account Mr. Lester's proposed accommodation. Mr. Lester nonetheless suggests that there is a meaningful difference between receiving *one-on-one* instructions and receiving *face-to-face* instructions. The court does not agree. The purpose of requiring direct, non-group instructions in the hypothetical was to ensure that Mr. Lahr could receive instructions personally and therefore in such a way that he could read the lips and body language of the supervisor as necessary. The ALJ appropriately accounted for Mr. Lester's hearing impairment in his step four and step five analysis.

C.     **Step Four: Ability to Perform Past Work**

Having determined Mr. Lester's residual functional capacity, the ALJ relied on the testimony of the vocational expert in finding that Mr. Lester could still perform two jobs he had previously held. Tr. 759.   Mr. Lester is correct that the ALJ erred in doing so.

At the most recent hearing, the ALJ and the vocational expert discussed that Mr. Lester's hearing impairment prevented him from working in settings ranked by the DOT as a "4" or higher on the noise intensity scale. Tr. 992. The ALJ also incorporated this specific limitation into his residual capacity function. Tr. 754. The kitchen helper position is categorized by the DOT (318.687-010) at a noise level of "4," yet the vocational expert opined that Mr. Lester could still work as a kitchen helper. No explanation of this deviation from the DOT was provided by the vocational expert or by the ALJ. *See Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) ("[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) (ALJ erred by relying on her own speculation and the brief testimony of a vocational expert in deviating from the DOT at step four). Thus the ALJ erred in finding that Mr. Lester could continue to work as a kitchen helper.

The ALJ also incorporated into his residual capacity finding and into the hypothetical he posed to the vocational expert that Mr. Lester was limited to jobs requiring only occasional public contact, meaning up to one-third of the time. Tr. 754, 994. The DOT categorizes "fast-foods worker" (311.472-010) as requiring "significant" interaction with people in order to serve them, and the narrative job description is replete with tasks involving customer interaction. The vocational expert had opined that fast-food workers "are not all at the counter. They are not all cashiers." Tr. 990. That personal observation, without further explanation or the support of objective evidence, is insufficient to justify deviating from the description of fast-foods worker contained in the DOT. Thus the ALJ erred in finding that Mr. Lester could continue to work as a fast-foods worker.

In sum, the ALJ's conclusion that Mr. Lester could engage in his past relevant work was not based on substantial evidence and was therefore in error.

## D.    Step Five: Ability to Perform Other Work

The ALJ's error at step four of the sequential analysis was, however, harmless because substantial evidence nonetheless supports the ALJ alternative finding that there are other jobs existing in significant numbers in the national economy that Mr. Lester could perform despite his residual functional capacity. *See Tommasetti*, 533. F.3d at 1043 (finding step four error to be harmless in light of the ALJ's alternative finding at step five); *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006) (discussing harmless error in social security cases where the ALJ's error was inconsequential to the ultimate determination of nondisability).

The vocational expert identified three possible job categories which would meet Mr. Lester's employment limitations: stock checker (DOT 299.667-014), collator stacker (DOT 653.687-0100), and hand packager (DOT 920.587-018).   As an initial matter, Mr. Lester is

OPINION AND ORDER – Page 15

correct that the DOT identifies the noise level of the hand packager occupation as a "4". Neither the vocational expert nor the ALJ accounted for this inconsistency with Mr. Lester's residual functional capacity. The ALJ, therefore, erred in concluding that Mr. Lester could perform the work of a hand packager.

There is substantial evidence, however, that Mr. Lester could perform the work of a stock checker or collator stacker. Mr. Lester points out that both of these positions, as described by the DOT, require frequent "fingering." However, as discussed previously, the ALJ did not err in applying Dr. Lahr's assessment as only excluding jobs requiring fine dexterity, not those requiring repetitive fingering. The DOT identifies these two occupations as requiring average to below average "finger dexterity." There is no contradiction between the DOT and the residual functional capacity finding, leaving the ALJ discretion to adopt the vocational expert's opinion that Mr. Lester could perform these jobs despite his impairment.

Mr. Lester also argues that a stock checker would have "direct and continuous contact with the public." Plf.'s Br. at 14. The DOT, however, describes the personal interaction required for this job as "not significant," and its narrative of job duties does not specify any direct contact with customers. Mr. Lester has not provided any basis for deviating from the DOT description other than his say-so. It was reasonable for the vocational expert and the ALJ to rely on the DOT's description in determining that stock checkers do not have more than occasional contact with customers.

The vocational expert testified that there are 6,800 collator stacker and stock checker positions in Oregon and 587,000 positions nationally. Even with the burden of proof on the Commissioner at step five, substantial evidence supports the ALJ's conclusion that there are significant numbers of jobs in the national economy that the claimant can perform. *See Gray v.*

OPINION AND ORDER – Page 16

*Commissioner*, 365 F. App'x 60, *3 (9th Cir. Feb. 8, 2010) (affirming ALJ's determination of nondisability at step five, even though ALJ may have identified only one suitable occupation for which there were 980 jobs in Oregon and 59,000 jobs in national economy).

## VI. CONCLUSION

Because substantial evidence supported the ALJ's conclusion that there are significant numbers of jobs in the national economy that the claimant can perform given his residual functional capacity, age, education and work experience, the Commissioner's decision that Mr. Lester is not disabled is AFFIRMED.

IT IS SO ORDERED.

Dated this 2nd day of December, 2011

                                          /s/ Michael H. Simon
                                            Michael H. Simon
                                       United States District Judge